**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|
|
|
UNITED STATES OF AMERICA          |
                                  |    **Criminal Case No.:  06-306 (EGS)**
             v.                   |
                                  |
JUNIOR SHAW,                      |
             **Defendant.**       |
                                  |
                                  |

## MOTION  TO SUPPRESS IDENTIFICATION
## AND SUPPORTING POINTS AND AUTHORITIES

Junior Shaw, Defendant, through counsel, respectfully moves this Court for an Order suppressing all identification evidence in this case, including any testimony about the out-of-court identifications and any in-court identification procedure. In support of this motion, on which the defendant requests an evidentiary hearing, counsel states:

1.       On June 5, 2007, the Government filed a ten-count superseding indictment against Mr. Shaw and six other individuals. Mr. Shaw is charged in Count One with Conspiracy to Possess with Intent to Distribute and to Distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine.  *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), 846.  He is also charged in Count Five with Unlawful Maintenance of a Premises to manufacture, distribute, store and use a controlled Substance and Aiding and Abetting.  *See* 18 U.S.C. §2; 21 U.S.C. § 856(a)(2).

2.       Jury selection was initially scheduled to begin on January 15, 2008, but has been postponed until January 22, 2008.  Mr. Shaw is scheduled to proceed to trial with codefendants Richards and Gant.

3.     This week the government informed defense counsel of a pre-trial identification procedure involving Defendant Shaw that had not previously been disclosed.[1] As discussed below, on May 2, 2003, at least one and possibly two witnesses identified Defendant Shaw by looking at a single photograph of him.

4.     The out-of court identifications must be suppressed because the identification procedure was unnecessarily suggestive and because the resulting identifications are unreliable.

5.     Any in-court identification would be tainted by the improper out-of-court procedure.

## Factual Background

The government alleges that the conspiracy in this case existed from approximately January 20, 2000 until at least September 26, 2006 in the District of Columbia, Maryland, and elsewhere.  The indictment does not list any overt acts as part of the conspiracy; nor does it charge Mr. Shaw with sales on any specific date.   At Mr. Shaw's detention hearing in this case, government counsel proffered that Mr. Shaw sold cocaine to an undercover officer on October 30, 2001 and that he was present when codefendant Richards made another sale to an undercover officer on November 9, 2001.[2]

Police reports provided to the defense during discovery indicate that the investigating officers had no information or knowledge of Defendant Shaw before the sales on October 30 and November 7, 2001.  On October 30, 2001, Investigator Darrick Wallace, working undercover, and an un-named special employee (hereafter "SE") went to 90 Webster Street, N.E. in an

---

[1] Defense counsel initially requested information about any pre-trial identification of Mr. Shaw in a discovery letter sent to AUSA Carpenter on October 12, 2007.  Mr. Carpenter never responded to counsel's request in writing and indicated orally that he believed discovery was complete.  As a result, counsel believed there was no formal pre-trial identification procedure involving Mr. Shaw.  More recently, defense counsel asked AUSA Marshall to confirm that there was no pre-trial identification procedure.  On January 14, 2007, government counsel provided defense counsel with copies of  photographs used during an identification procedure.  On January 16, 2007, counsel received a copy of a police report dated May 12, 2003, that discusses the identification.

[2] Counsel notes that these are the only specific dates for which the government has provided detailed information about the defendant's alleged misconduct during the course of the conspiracy.

attempt to purchase drugs from co-defendant Michael Richards, also known as "Wayne."

Wallace waited in the car, while the SE went into the building. When the SE returned to the car,

he told Wallace that he knocked on the door of apartment #104, the target location, but received

no response. The SE also said that while he was in the building, an unknown man walked out of

apartment #103, said that "Wayne" was not around, and indicated he would make a sale. Officer

Wallace then went into the building with the SE. In the hallway, they met with a man who

identified himself only as "John." Wallace gave "John" $600 in exchange for a half ounce of

cocaine. The three then had a brief conversation about the John's cellular telephone number,

after which John gave Wallace a telephone number on a small slip of paper. Wallace and the SE

then left the building.

On November 9, 2001, police reports indicate that Officer Wallace again went with the

SE to Webster Street to make another undercover buy. The SE spoke with co-defendant

Richards outside of 86 Webster Street. Wallace joined the conversation and then paid Richards

$600 for one half ounce of cocaine. Officer Wallace asked the SE to get a telephone number for

Richards. Richards then told someone standing in the doorway of 86 Webster Street to give the

officer a phone number. According to the reports, the person in the doorway was the same

person identified as "John" during the October 30th transaction. After "John" gave the officer a

phone number, the officer and the SE drove away from the area.

Despite numerous subsequent undercover buys, there is no mention in any of the police

reports about the person identified as "John." Defendant Shaw also does not appear on any of

numerous undercover surveillance videos.

Defendant Shaw was arrested in Prince Georges County, Maryland on August 1, 2002

and detained at the State's detention facility. In January of 2003, he entered a guilty plea and

was sentenced.  He was incarcerated continuously in Maryland from August of 2002 until he was released on parole on December 29, 2005.

According to the report that counsel just received, on May 2, 2003, a Special Employee identified a photograph of Defendant Shaw as the person known to him as "John."  The report is a Metropolitan Police Department WACIIS report dated May 12, 2003.  It indicates that Investigator Singletary showed an informant a photo of Junior Shaw at approximately 8:00 pm on May 2, 2003.  The informant positively identified the photo as the individual known to the informant as "John."  A notation attached to a photo of the defendant also indicates a positive ID by the SE at that time. "UC #3981" is also written on the notation.  Upon information and believe, Officer Derrick Wallace is "UC #3981."   Defense counsel asked government counsel for more information about the procedure, but has not received any further information as of this writing.  It seems clear, however, that Defendant Shaw was identified by the Special Employee who participated in the 2001 sales as well as by Officer Wallace when they were shown a single photograph of him in May of 2003.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    BECAUSE THE IDENTIFICATION PROCEDURE WAS UNRELIABLE AND UNDULY SUGGESTIVE, ANY TESTIMONY REGARDING IN-COURT OR OUT-OF-COURT IDENTIFICATIONS MUST BE SUPPRESSED.

Identification evidence that is "unnecessarily suggestive" and which creates a "very substantial likelihood of misidentification" may not be admitted at trial.  Niel v. Biggers, 409 U.S. 188 (1972).   The Supreme Court has recognized show-ups as one of the most inherently suggestive forms of identification procedure.  See e.g. Stovall v. Denno, 388 US 293 (1967).  In fact, courts have often condemned the practice of showing a single suspect to a witness for the purpose of eliciting an identification because the procedure is so highly suggestive in that it

4

increases the likelihood of misidentification.  See e.g. Stovall v. Denno, supra; Niel v. Biggers, supra. "It is the likelihood of misidentification which violates a defendant's right to due process . . . . " Niel v. Biggers, supra.

The primary consideration in determining admissibility is the reliability of the identification evidence.  Watkins v. Sowders, 449 U.S. 341, 347 (1981); Manson v. Brathwaite, 432 U.S. 98, 112 (1977).  Reliability is determined by weighing the "corrupting effect of the suggestive identification" against several factors, including, the witness' opportunity to view the suspect, his degree of attention and accuracy of his prior description and level of certainty. Brathwaite at 114.

Where, as here, the in-court testimony would not reflect any source other than the impermissible suggestive out-of-court identification, any subsequent in-court identification may only be made if the government can point to indicia of reliability sufficient to justify its admission. The Government can elicit an in-court-identification only after demonstrating that the in-court identification rests on a source independent of the tainted pre-trial identification.  See United States v. Wade, 388 U.S. 218, 241 (1967).

An evidentiary hearing on this motion will demonstrate the unreliability of the identifications. Specifically, the hearing will demonstrate that there are insufficient factors to outweigh the corrupting effect of the inherently suggestive procedure. The two encounters in 2001 with the person who identified himself as "John" were very brief.  The October 30, 2001 incident occurred briefly in a hallway and in the November 9, 2001, incident the transaction principally involved co-defendant Richards.  The person known as "John" was standing in a doorway at the end of the transaction and appeared only to give a phone number.  The photo identification occurred more than a year and a half later.  Further, it seems the witnesses were

5

shown only one photo, thus increasing the likelihood of mis-identification. Because the defendant does not have complete information about the circumstances of the identifications at this time, however, he respectfully requests that he be allowed to inquire about the circumstances of the identification at an evidentiary hearing.

After an out-of-court identification that was unduly suggestive, the prosecution can elicit an in-court identification only after demonstrating that any in-court identification by the witness rests on a source independent of the tainted pre-trial identification. *See United States v. Wade*, 388 U.S. 218, 241 (1967). If an out-of-court identification is unreliable and hence inadmissible, any subsequent in-court identification almost always will be inadmissible

<u>CONCLUSION</u>

For the above stated reasons and any other reasons that may appear to the Court, the defendant respectfully requests that this motion be granted, and that any  identification testimony be suppressed at the trial in this case.

Respectfully Submitted,


_____/s/_____
Andrea Antonelli
Counsel for Junior Shaw
Bar No. 450238

Suite 301
806 Seventh Street, NW
Washington, DC  2004
Telephone: 202-255-3654
Facsimile: 202-898-1991
e-mail:  apantonelli@verizon.net

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. 06-306 (EGS)** |
| | **:** | |
| **JUNIOR SHAW,** | **:** | |
| Defendant. | **:** | |

     This matter came before the Court on the defendant's Motion to Suppress Identification.  Having considered the motion, the government opposition, and being fully informed on the record herein, the defendant's motion is hereby **GRANTED**.  It is, therefore,

     **ORDERED,** that the evidence of the out-of-court and in-court identifications of the defendant are hereby suppressed.

     **SO ORDERED** this _____ day of _____, 2008.

_____
Emmet G. Sullivan
United States District Judge